UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KENDRICK DEON STANTON,

                  Petitioner,                   Case No. 1:14-cv-709

v.                                   Honorable Robert J. Jonker

CARMEN PALMER,

                  Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Kendrick Deon Stanton is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Michigan. On December 15, 2009, a Saginaw County Circuit Court jury found Petitioner guilty of torture, MICH. COMP. LAWS § 750.85, unlawful imprisonment, MICH. COMP. LAWS § 750.349b, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and felony firearm, MICH. COMP. LAWS § 750.227b. On January 12, 2010, the court sentenced Petitioner to concurrent prison terms of 375 months to 50 years for the torture conviction, 150 months to 30 years for the unlawful imprisonment conviction and 43 months to 10 years for the firearm possession conviction. Petitioner was also ordered to serve two years of imprisonment for felony firearm, consecutive to his other sentences.

Petitioner has filed a habeas corpus petition raising four grounds for relief, as follows:

    I.      Did the trial court err when it found that the rape-shield statute prevented the admission of any evidence of Ms. Hahn's previous sexual relationships with Mr. Stanton's co-defendants, in violation of his constitutional right to confrontation.

II.     Did the trial court err when it overruled the hearsay objection made by trial counsel to testimony from the complainant's mother as to an out-of-court statement by the complainant that corroborated her trial allegations.

III.     Mr. Stanton was denied a fair trial by the admission of testimony from a witness who was not qualified to testify as an expert because the defense was not allowed to *voir dire* the witness, and the jury was not made aware of the witness' qualification to testify as an expert.

IV.     Mr. Stanton was denied his right to the effective assistance of counsel on appeal in violation of his due process of law here counsel failed to effectively argue issue on appeal that had merit in addition to those that were raised.

(Pet., ECF No. 1, PageID.4-8.) Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they all lack merit and habeas issue III has been procedurally defaulted. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds lack merit. Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.     **Factual allegations**

#### A.     According to the victim

On October 22, 2008, Shari Hahn, Petitioner's former girlfriend, went with a group of friends to the home of Petitioner's new girlfriend, Valerie Ruiz, at 409 Saginaw St, Saginaw, Michigan. (Trial Tr. I, ECF No. 11-12, PageID.506-508.) She arrived at Ms. Ruiz's home with Dezarick Henderson, Glenn O'Neal, and Oscar (last name unknown). (*Id.,* PageID.508.) Petitioner, Jennifer Thompson, Kijuan Tolliver, and Valerie Ruiz arrived later. (*Id.*)

At some point in the evening, Ms. Hahn stepped in some dog feces in the home. She inadvertently tracked it around the house. (*Id.*, PageID.508-509.) Petitioner was angry at Ms. Hahn for messing up the carpets. (*Id.,* PageID.509.) Later in the evening, Petitioner informed the

group that some money and a ring belonging to Ms. Ruiz were missing. (*Id.*) Petitioner took Ms. Hahn into a different room and directed her to remove her clothing. (*Id.*) He searched the clothing, but did not discover the money or the ring. *(Id.,* PageID.510.) Ms. Hahn got dressed and returned to the living room. (*Id.*)

As Ms. Hahn sat in the living room, Petitioner picked up a telephone book and hit her across the head a few times. (*Id.*) Ms. Hahn attempted to dial 9-1-1, but Petitioner took her cell phone. (*Id.*) Ms. Hahn attempted to leave, but she only was a little ways outside the home before O'Neal dragged her back into the house. *(Id.,* PageID.510-511.) Shortly thereafter, Jennifer, Oscar, and Kijuan left, leaving Ms. Hahn with only Petitioner, Henderson, and O'Neal. *(Id.,* PageID.511.)

Petitioner threw Ms. Hahn to the floor and dragged her by her hair to a bedroom. (*Id.*) Petitioner again directed Ms. Hahn to disrobe. (*Id.*) She was struck with a belt and a broomstick and threatened with a steak knife and a gun. (*Id.*, PageID.512-513.) Petitioner poked Ms. Hahn with the knife until she bled. (*Id.*) Petitioner sprayed a chemical substance, waterproofer for shoes, into her eyes. (*Id.*) O'Neal and Henderson held Ms. Hahn down as Petitioner penetrated her vagina with the broomstick. *(Id.,* PageID.513.) Later, Petitioner tried to suffocate her with a plastic bag and tried to choke her. *(Id.,* PageID.513-514.)

When Petitioner was done, he told O'Neal and Henderson they could do what they wanted with Ms. Hahn. *(Id.,* PageID.514-515.) O'Neal penetrated Ms. Hahn orally with his penis while Henderson penetrated her vagina from behind with his penis. *(Id.,* PageID.515.) After a time they switched positions. (*Id.*)

Eventually they left Ms. Hahn alone in the room. (*Id.*) She stayed until about noon the next day. *(Id.,* PageID.516-517, 527.) At that point the men permitted her to leave. *(Id.,*

PageID.517)  She rode her bicycle to a telephone and called her mother.  (*Id*.)  Her mother picked her up and took her home, called the police, and then took Ms. Hahn to the hospital.  (*Id*.)

B.  According to Petitioner

Petitioner's testimony was consistent with Ms. Hahn's with respect to many of the events of the evening, including Ms. Hahn's claim that Petitioner hit her with the telephone book, the broomstick, and one or more belts.  (Trial Tr. III, ECF No. 11-14, PageID.617-624.)  Petitioner denied dragging Ms. Hahn into the backroom by her hair, threatening her with a gun or a knife, poking her with a knife, or penetrating her vagina with the broomstick.  (*Id*., PageID.625, 629-630.)  Petitioner denied holding her in the house against her will.  *(Id.,* Page 628.)  Petitioner also claimed that any sexual activity between O'Neal, Henderson, and Ms. Hahn was consensual.  (*Id*., PageID.626-628.)

C.  Other witnesses

The jury also heard testimony from several other witnesses.  Ms. Hahn's mother testified that she picked up Ms. Hahn after her phone call, spoke with her about the events of the prior evening, called the police, and took her to the hospital.  (Trial Tr. II, ECF No. 11-13, PageID.556-558.)  Several police officers testified.  Officer Frederick Mata testified that he was dispatched to the hospital to meet Ms. Hahn.  (*Id*., PageID.559.)  Based on what she told him, he obtained and executed a search warrant for the home at 409 Saginaw.  (*Id*.)  Other officers testified regarding the search of the home and evidence seized, the CSC kit, and the collection of Petitioner's fingerprints.  (*Id*., PageID.561-569.)  The jury heard from a latent print examiner from the Michigan State Police laboratory that Petitioner's prints were on the broomstick.  (*Id*., PageID.570-571.)  Michigan State Police laboratory civilian employee Jodi Corsi testified regarding the collection of DNA samples from the CSC kit.  (*Id*., PageID.572-573.)  On cross-

examination, Petitioner's counsel asked Ms. Corsi whether she tested the knife or gun for the presence of blood. (*Id.*, PageID.573.) She testified that she did not find blood on either item. (*Id.*) On redirect, Ms. Corsi testified further that washing the knife would decrease the possibility of finding evidence on it. (*Id.*, PageID.574.)

Michigan State Police laboratory employee Shannon Aho testified regarding the DNA analysis of the evidence collected. (*Id.*, PageID.574-577.) She reported that DNA taken from the threaded end of the broom stick was likely Ms. Hahn's. (*Id.*, PageID.576.) Finally, Registered Nurse Mary Conley testified regarding her examination of Ms. Hahn and her collection of the CSC kit evidence from Ms. Hahn. On cross-examination, Petitioner's counsel asked Ms. Conley to differentiate, in the pictures from her examination of Ms. Hahn, older injuries from recent injuries. (*Id.*, PageId.581) She concluded that the bruising appeared recent. (*Id.*, PageId.581-582.)

### D. The verdict

With respect to each of the principal charges (torture, first-degree CSC, and kidnapping), the trial court instructed the jury on lesser included offenses as well as the main charge. With respect to torture, the court also provided an instruction on assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84. (Trial Tr. IV, ECF No. 11-15, PageID.672.) With respect to first degree CSC, the court also provided an instruction on third-degree CSC, MICH. COMP. LAWS § 750.520d. (*Id.*, PageID.673.) With respect to kidnapping, the court also provided an instruction on unlawful imprisonment, MICH. COMP. LAWS § 750.349b. (*Id.*, PageID.673-674.)

The jury's verdict suggests that they believed Ms. Hahn at least in part. They found Petitioner guilty of torture, felon in possession of a firearm, and felony firearm. (*Id.*, PageID.676.)

But, it appears they believed Petitioner with regard to some of his testimony because they found Petitioner not guilty of first-degree criminal sexual conduct, even though Ms. Hahn's DNA was found on the threaded end of the broomstick, and reduced the kidnapping charge to unlawful imprisonment. (*Id.*) On January 12, 2010, the trial court sentenced Petitioner to the terms of imprisonment outlined above. (Sentencing Tr., ECF No. 11-16.)

### E. Post-judgment proceedings

Petitioner, with the assistance of appointed counsel, filed an appeal with the Michigan Court of Appeals raising two issues: habeas issues I and II above, regarding the trial court's refusal to permit the admission of evidence regarding Ms. Hahn's previous sexual relationships with O'Neal and Henderson under the Rape-Shield statute, and permitting the admission of hearsay testimony from Ms. Hahn's mother regarding what Ms. Hahn told her mother about the incident. (Appeal Br., ECF No. 11-19, PageID.747.) By unpublished opinion dated November 22, 2011, the Michigan Court of Appeals affirmed the trial court as to both issues. (Mich. Ct. App. Op., ECF No. 11-19, PageID.740-743.) Petitioner raised the same two issues in his application for leave to appeal in the Michigan Supreme Court. (Appl. for Leave to Appeal, ECF No. 11-20, PageID.802.) That court denied leave by order entered April 23, 2012. (Mich. Ord., ECF No. 11-20, PageID.791.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.) Instead, he returned to the trial court and filed a motion for relief from judgment raising two new issues: habeas issues III and IV, regarding the erroneous admission of opinion testimony from a lay witness and the ineffective assistance of appellate counsel for failing to raise that issue on direct appeal. (Mot. for Relief from J., ECF No. 11-17, PageID.707.) The trial court denied relief on the merits. (Saginaw Cty. Cir. Ct. Ord., ECF No. 11-18.) Petitioner

sought leave to appeal that decision in the Michigan Court of Appeals and the Michigan Supreme Court. (Pro Per Appl. for Leave to Appeal, ECF No. 11-21, PageID.834-840; Pro Per Appl. for Leave to Appeal, ECF No. 11-22, PageID.892-899.) Those courts denied leave by orders entered July 3, 2013 and December 23, 2013, respectively. (Mich. Ct. App. Ord., ECF No. 11-21, PageID.829; Mich. Ord, ECF No. 11-22, PageID.891.)

Petitioner filed this habeas petition on June 27, 2014. (Pet., ECF No. 1, PageID.10.)

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not

include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    The rape shield statute

Petitioner's counsel posed a question to Ms. Hahn regarding consensual sexual encounters with friends of Petitioner prior to October 22, 2008.  (Trial Tr. I, ECF No. 11-12, PageID.521.)  Counsel indicated that he believed Ms. Hahn had engaged in consensual sex with Henderson and O'Neal that night and that such behavior was consistent with a pattern of consensual sexual encounters between Ms. Hahn and friends of Petitioner, including O'Neal and Henderson.  (*Id*.)  The prosecutor objected based on the rape shield statute.  The statute provides:

> Evidence of specific instances of the victim's sexual conduct . . . shall not be admitted under sections 520b to 520g[, the statutory sections defining criminal sexual conduct,] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a)   Evidence of the victim's past sexual conduct with the actor.
>
> (b)   Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

MICH. COMP. LAWS § 750.520j(1).  The trial court ruled that Petitioner's counsel could ask Ms. Hahn about what happened between her and O'Neal and Henderson that night, but that counsel could not ask about prior sexual activity with them or anyone else.  (*Id*., PageID.522.)  When counsel inquired about the events of that evening, Ms. Hahn testified that her sexual activity with O'Neal and Henderson was not consensual.  (*Id*., PageID.524-525.)

On appeal, Petitioner contended that refusing to permit the inquiry into Ms. Hahn's sexual history with O'Neal and Henderson violated his Sixth Amendment right to confront the witnesses against him.  The Michigan Court of Appeals rejected that argument:

> In support of his argument, defendant cites *People v Perkins*, 379 NW2d 390 (1986).  In *Perkins*, the defendant sought to introduce evidence that, about a week before the alleged assault, he and the complainant had consensual sex during an evening in which they engaged in other activities (i.e., meeting at a bar for drinks, returning to his apartment for more drinks) that were similar to those they

engaged in on the evening of the assault alleged in the case. *Id*. at 304. The circuit court ruled that the evidence was admissible because it was "material to the issue of consent and more probative than prejudicial." *Id*. at 305. In upholding the circuit court's decision, our Supreme Court held that

> [b]ecause the proposed testimony . . . related to sexual activity between the complainant and the defendant, the strong prohibitions on evidence of a complainant's past sexual activities, which we have discussed in several recent opinions, are not involved. As the statute indicates, we are faced with the more usual evidentiary issues of the materiality of the evidence to the issues in the case and the balancing of its probative value with the danger of unfair prejudice. [*Id*. at 307-308.]

The *Perkins* Court concluded that the trial court did not abuse its discretion resolving these evidentiary issues; consequently, the defendant's proposed testimony was not barred by MCL 750.520j. *Perkins*, 424 Mich at 308-309.

Here, by contrast, defendant's prior sexual history with the complainant was not at issue; neither party claimed that they had either consensual or coerced sexual relations on the night of the assault, and the complainant and defendant both admitted that they had engaged in sexual activity together in the past. The complainant did not accuse defendant of forcing her to have sex with him on the date of the assault, and defendant was acquitted of first-degree criminal sexual conduct (CSC I), MCL 750.520b, with which he was charged for allegedly penetrating the complainant with a broomstick. Defendant's semen or other source of DNA was not found on the complainant's underwear, so evidence to explain the source or origin of semen found as part of the CSC kit was not admissible under MCL 750.520j(1)(b).

Defendant argues that if all three men had been tried together, the evidence would have been admissible. Assuming that the court would have determined that any probative value of the testimony was not outweighed by any potential prejudice, defendant's argument fails to comprehend that the evidence would still have been irrelevant with respect to defendant. Indeed, it is likely that a request to instruct the jury limiting its consideration of the evidence would have been granted. The plain language of MCL 750.520j(1)(a) provides that "[e]vidence of the victim's past sexual conduct with the actor" is potentially admissible, and for purposes of this testimony, defendant is not "the actor." (Emphasis added.)

Defendant also does not demonstrate that the outcome of the other charges would have been different if he had been permitted to introduce evidence of the complainant's prior sexual behavior with codefendants. Defendant's broad assertion that the admission of this evidence might have thrown the complainant's credibility into question and ultimately altered the outcome of the case is entirely speculative.

(Mich. Ct. App. Op., ECF No. 11-19, PageId.741-742.)

To prevail, Petitioner must show that the state appellate court's determination was contrary to, or an unreasonable application of, clearly established federal law. He has failed to meet that standard. The Constitution protects a defendant's right to cross-examine his accusers. *Davis v. Alaska*, 415 U.S. 3-8, 316-317 (1974). But the Confrontation Clause does not guarantee cross-examination "'in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). States may place reasonable limits on the scope of cross-examination. Clearly established federal law supports the conclusion that Michigan's rape shield law is just such a reasonable limit. In *Batey v. Haas*, 573 F. App'x 590 (6th Cir. 2014), the Sixth Circuit provided reasons that Michigan's rape shield law is permissible:

First, Michigan has authority to enact a rape-shield law, the purpose of which is to limit inquiry, including cross-examination, about the sexual history of a victim of sexual abuse. As the Supreme Court has told us—in the context of a constitutional challenge to Michigan's rape-shield law no less—the Michigan statute "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Michigan v. Lucas*, 500 U.S. 145, 149–50 (1991). Sometimes the right to present relevant testimony must "bow to accommodate other legitimate interests," such as the privacy rights of victims of sexual abuse. *Id*. at 149 (quotation omitted). . . . Michigan's rape-shield law serves legitimate governmental interests.

Second, in applying the rules of evidence, including a State's rape-shield law, state trial judges "retain wide latitude" to impose reasonable limits on a defendant's cross-examination of an adverse witness "based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*. (internal quotation marks omitted). To show that a judge has exceeded that latitude in the context of an as-applied challenge to the scope of cross-examination on Confrontation Clause grounds, the litigant must show that the exclusion of testimony was "arbitrary or disproportionate" to its purposes. *Id*. at 151 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998). All that is required in other words is that any limitation on cross-examination be reasonable. Otherwise, every restriction on questioning would turn into a mini-constitutional inquiry, subverting the long-held view that the Confrontation Clause is not the font of "a vast and precise body of constitutional common law controlling

the particulars of cross-examination." *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir. 1989) (quotation omitted); *see also Scheffer*, 523 U.S. at 308 ("[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."). So long as the trial judge reasonably concludes that the State's interest in exclusion outweighs the defendant's need for the evidence, the Constitution permits the rape shield to do its intended work. See *Gagne v. Booker*, 680 F.3d 493, 514 (6th Cir. 2012) (en banc plurality) ("[T]he trial court must balance a state's interest in excluding certain evidence under the rape shield statute against a defendant's constitutionally protected interest in admitting that evidence, on a case-by-case basis—neither interest is superior per se.").

*Batey*, 573 F. App'x at 593-94.

It is particularly difficult for Petitioner to demonstrate that the state court's decision is contrary to, or an unreasonable application of, clearly established federal law where, as here, the state court is vested with broad discretion in balancing competing interests. As the Supreme Court explained in *Yarborough v. Alvarado*, 541 U.S. 652 (2004):

[T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [citation omitted].

*Id*. at 664.

Petitioner sought to introduce evidence of prior sexual conduct between the victim, Henderson, and O'Neal. The trial court concluded that sexual conduct between those persons during the night of October 22, 2008, was part of the *res gestae* of the crimes of which Petitioner was accused. Petitioner was not, however, being charged with the allegedly non-consensual sexual conduct between those persons. The only criminal sexual conduct at issue in the charges against Petitioner was the vaginal penetration with the broomstick. Under those circumstances—where the proffered evidence of prior sexual conduct had no direct bearing on Petitioner's criminal

conduct and the state court is vested with significant discretion in balancing competing interests—the state courts' conclusion that Petitioner's confrontation rights must yield to the state's interest in protecting the victims of sexual abuse is reasonable. At a minimum, the result at least falls within the range of outcomes that might be the subject of fairminded disagreement and, therefore, habeas relief is not warranted.

Even if the trial court's decision were unreasonable, however, Petitioner would not be entitled to relief. "Unconstitutional limitations on cross-examination are normally subject to harmless-error analysis." *Hargrave v. McKee*, 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Van Arsdall*, 475 U.S. at 681-84). On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave*, 248 F. App'x at 738 (citing *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007)); *see also Vasquez v. Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. In determining whether the restriction was harmless, a court must consider a number of factors, "'includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *Hargrave*, 248 F. App'x at 728 (quoting *Van Arsdall*, 475 U.S. at 684). Where Petitioner was not held at all criminally responsible for the first-degree criminal sexual conduct of which he was accused, but was instead found not guilty, it would defy logic to conclude that the trial court's restriction on inquiry into prior consensual sexual encounters between the victim, Henderson, and O'Neal would have improved

the result. There was nothing in the presentation of the proofs or argument regarding the torture charge or the kidnapping charge that depended upon the sexual activity between those parties. The jury apparently did not believe Ms. Hahn's testimony regarding the sexual activity that evening. Therefore, I conclude that if the trial court's exclusion of testimony regarding prior sexual activity were constitutionally infirm, the error was harmless.

## IV.    Hearsay testimony

Petitioner next challenges the admission of hearsay testimony during the direct examination of the victim's mother. The Michigan Court of Appeals rejected this challenge:

> Defendant's contention that certain testimony by the complainant's mother should have been excluded as inadmissible hearsay is also not persuasive. At trial, during the direct examination of the complainant's mother, the following exchange occurred between the witness and the prosecutor:
>
> Q:      What was [the complainant's] physical condition when you picked her up?
>
> A:      She was shaking and quiet.
>
> Q:      Did she tell you what happened to her?
>
> A:      At that time she just told me that she had gotten beat up.
>
> Defense counsel objected to this testimony as hearsay, which was overruled by the trial court after it accepted the prosecutor's explanation that it was not being offered for the truth of the matter asserted. On appeal, defendant characterizes this portion of the witness's testimony as a prior consistent statement that was improperly used to bolster the complainant's credibility.
>
> Under MRE 801(c), hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In response to defense counsel's objection, the prosecutor contended that he was "offering [the testimony] not for truth of the matter asserted, but [because it] justifies this witness's further actions and the phone calls that she made." This discussion and the court's ruling on the limited purpose for which the evidence was being offered was had in front of the jury. The prosecutor did not ask the witness to elaborate or give further details on her conversations with the complainant about the alleged attack. Moreover, because numerous other sources of evidence were presented corroborating the

14

complainant's claim that she was assaulted by defendant, any error by the court in admitting this testimony was harmless, as it did not affect the outcome of the trial. MCL 769.26; MCR 2.613(A); *People v Hill*, 257 Mich App 126, 140; 667 NW2d 78 (2003).

(Mich. Ct. App. Op., ECF No. 11-19, PageID.742-743.)

As a matter of state law, the court of appeals concluded that the evidence was admissible because it was not offered to prove the truth of the matter asserted. The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76)). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67-68.

Whether or not the statement was admissible as a matter of state law, Petitioner claims that the admission of the Complainant's out-of-court statements violated his constitutional rights. To prevail, Petitioner must show that the admission of this evidence rises to the level of a due process violation because it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Further, this Court may not grant relief unless Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or that the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

To the extent Petitioner contends the admission of the victim's out-of-court statement offends his Fourteenth Amendment due process rights, his argument fails. There is no "Supreme Court holding granting relief on his due process theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause." *Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013). Thus he cannot show that the state court's decision regarding the evidence "'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* (citing 28 U.S.C. § 2254(d)).

Petitioner fares no better if he relies on the Confrontation Clause. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI. The Supreme Court has long read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242-43 (1895) and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). As stated by the Court:

> Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:
>
> > "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895).
>
> Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

*California v. Green*, 399 U.S. 149, 157-58 (1970).

Because Ms. Hahn testified at trial and was subject to cross-examination, the admission of her out-of-court statement did not violate the Confrontation Clause. Petitioner therefore has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law regarding the Confrontation Clause.

Even if Petitioner could demonstrate that the admission of the out-of-court statement violated some other constitutional guarantee, he still would not be entitled to habeas relief. The state appellate court's determination that any error was harmless is eminently reasonable. The gist of the out-of-court statement was that Ms. Hahn had been "beat up." That statement was entirely cumulative of the in-court testimony of Ms. Hahn and every person who examined her. It was even cumulative of Petitioner's testimony. With respect to the state court's determination that any error was harmless, Petitioner has failed to show that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, Petitioner's habeas challenge to the admission of Ms. Hahn's out-of-court statements has no merit.

## V.    Lay opinion testimony

Petitioner also challenges the trial court's admission of testimony from witnesses Jodi Corsi and Mary Conley, testimony he characterizes as expert opinion testimony, because the witnesses were not offered for *voir dire* and the court did not otherwise comply with the rules regarding expert testimony. Petitioner raised this challenge for the first time in the trial court through his motion for relief from judgment.[1] The trial court rejected the premise of Petitioner's

---

[1] Respondent argues that the issue has been procedurally defaulted. The doctrine of procedural default is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). Here, the state court disregarded the procedural default and considered Petitioner's challenge on the merits.

argument. The court determined that both witnesses offered permissible lay opinion testimony under Michigan Rule of Evidence 701:

> Defendant's first argument is that the Court improperly admitted expert testimony from two individuals, Jodi Corsi and Ma1y Conley. Defendant claims that both Corsi and Conley gave testimony as to their expert opinions without being properly qualified as experts by the Court or being offered for *voir dire* on their credentials. Defendant is correct in his assertion that neither Corsi nor Conley were qualified as experts. However, Defendant has failed to consider that Corsi and Conley's testimony may be otherwise admissible as lay testimony. Pursuant to MRE 701, lay witnesses may give their lay opinions under certain circumstances. MRE 701 provides:
>
> > If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
>
> Further, MRE 602 states that, in order to give testimony, a witness must have personal knowledge of the matter. A review of whether testimony was properly admitted under these standards is conducted under an abuse of discretion standard. *Richardson v Ryder Truck Rental*, 213 Mich App 447, 454-455 (1995); *People v Daniel*, 207 Mich App 47 (1994). Relief may only be granted if the Court is convinced that, in light of the entire record, that any errant admission of evidence resulted in a miscarriage of justice. MCL 769.26; *People v Lukity*, 460 Mich 484, 495-96 (1999).
>
> With regard to the testimony of Jodi Corsi, this Court finds no error was made in permitting her to testify as a lay witness, and thus no relief will be granted. Corsi, a civilian working in the biology unit at the Michigan State Police Bridgeport Forensic Laboratory, primarily gave testimony regarding her preparation of samples from various pieces of evidence for later DNA testing by the Michigan State Police Lansing Forensic Laboratory. Defendant's improper testimony claims appear to pertain only to Corsi's cross-examination and redirect testimony regarding a knife and carbine allegedly used on the night in question. On cross-examination, defense counsel asked Corsi whether she had tested the two items for biological substances. Corsi indicated that she had tested the two items for blood, and both had come back negative. On redirect, Corsi explained that she had tested the items by examining them under a bright light using a magnifying glass/stereoscope, and testing anything that looked similar to the color of blood. She did not elaborate on the nature of this testing. After additional questioning by the prosecutor, Corsi also offered an opinion that washing a knife would decrease the likelihood that evidence would be found on it.

This Court finds Corsi's testimony was admissible under MRE 701. As previously noted, MRE 701 permits a lay witness to testify about opinions or inferences that are rationally based on the witness' perception and that are helpful to a determination of a fact in issue. A lay witness is permitted to testify to conclusions that are not "overly dependent on scientific, technical, or specialized knowledge . . . " *Richardson, supra*, at 456. Corsi's testimony as to the lack of blood on the knife and carbine was primarily based on her visual inspection of those items, and the conclusions she offered were helpful to the jury. The fact that she may have conducted supplemental testing to verify that certain residues were not blood does not serve to make her testimony "overly dependent on scientific, technical or other specialized knowledge" in this Court's opinion. Similarly, Corsi's response to the prosecutor's hypothetical about washing a knife was permissible lay testimony. Admission of such a common sense statement does not require [a] qualified expert.

The Court also finds that Mary Conley offered permissible lay testimony. Conley, a nurse with specialized training in examining victims of sexual assault, testified about her examination of the victim and completion of the sexual assault kit. In doing so, she identified various components of the sexual assault kit and photographs of the victim's injuries. During cross-examination and redirect, Conley explained how she determined whether a wound or bruise was old or fresh, and how the visual appearance of a bruise caused by blunt force would change over time. She indicated that it was her opinion that most of the bruising she observed was fresh. As with Corsi, this Court finds Conley's testimony was admissible under MRE 701. Conley's testimony was rationally based on her perceptions during her examination of the victim, and was helpful in conveying to the jury the nature of the victim's injuries. Conley relied on no highly specialized information in drawing her conclusions; the average member of the public is aware that puncture wounds, scratches, and bruises change in appearance as they age. *See* MRE 702; *People v McLaughlin*, 258 Mich App 635, 658 (2003) (citing *Leavesly v Detroit*, 96 Mich App 92, 94 (1980), mod 409 Mich 926 (1980)). Given that Conley's testimony was permissible under MRE 701, the Court finds no error warranting relief.

(Saginaw Cty. Cir. Ct. Ord., ECF No. 11-18, PageID.737-739.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." *Id.* at 68. As noted above, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)) (other internal quotations omitted); *accord Bugh*, 329 F.3d at 512; *Coleman*, 268 F.3d at 439. This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, as with the evidentiary issues discussed above, the Court may not grant relief if it would have decided the evidentiary question differently. The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860. Once again, Petitioner has failed to meet this difficult standard.

No Supreme Court decision either holds or suggests that the admission of lay opinion testimony violates due process. As a consequence, the admissibility of the evidence is purely one of state law, not cognizable on habeas review. *Estelle*, 502 U.S. at 67-68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Stumpf*, 722 F.3d at 746 n.6 (holding that "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw*, 546 U.S. at 76).

Finally, even if introduction of the lay opinion testimony violated Petitioner's constitutional rights, the error was harmless. The only opinion testimony that could have operated to Petitioner's detriment was Nurse Conley's testimony that the bruises were fresh. That

testimony, however, was entirely cumulative of the direct testimony by Ms. Hahn and Petitioner that Petitioner, on the night of October 22, 2008, beat Ms. Hahn with a telephone book, belts, and a broomstick.  Ms. Corsi's testimony that there was no blood on the gun or the knife was entirely consistent with Petitioner's version of events.  Undoubtedly, that is why Petitioner's counsel elicited the testimony on cross-examination.  Petitioner's challenge to the admission of the lay opinion testimony does not warrant habeas relief.

## VI.     Ineffective assistance of appellate counsel

In Petitioner's motion for relief from judgment, he also argued that his appellate counsel rendered ineffective assistance because counsel failed to present the argument regarding Corsi's and Conley's opinion testimony on direct appeal.  The trial court disagreed:

> A failure to assert all arguable claims is not sufficient grounds to overcome the presumption that counsel functioned as a reasonable appellate attorney.  *People v Reed*, 449 Mich 375, 391 (1995).  An "appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance."  *Id*.  It would be highly illogical for this Court to find Defendant's appellate counsel ineffective for failing to raise the claims that the Court has found to be meritless . . . .

(Saginaw Cty. Cir. Ct. Ord., ECF No. 11-18, PageID.739.)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  The Petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.  The Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id*. (citing

*Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, Petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must

have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). The state court's conclusion that Petitioner's appellate counsel did not render ineffective assistance by failing to raise a meritless issue is neither contrary to, nor an unreasonable application of, *Strickland*, the clearly established federal law regarding ineffective assistance of counsel. Accordingly, Petitioner has failed to demonstrate that he is entitled to habeas relief.

### Certificate of Appealability

Unless the Court issues a certificate of appealability, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  December 12, 2017                              /s/ RAY KENT
                                                                      United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).